Arthur **DAVIS**, Plaintiff–Appellant,

v.

Kay **BRYAN** and Raymond Lopes, Defendants–Appellees.

No. 1273, Docket 89–2101.

United States Court of Appeals, Second Circuit.

Argued June 22, 1989.

Decided Nov. 14, 1989.

William M. Bloss, New Haven, Conn. (Jacobs, Grudberg, Belt & Dow, New Haven, Conn. of counsel), for plaintiff-appellant.

Leslie D. McCallum, Asst. Atty. Gen., Hartford, Conn. (Clarine Nardi Riddle, Acting Atty. Gen. (Deputy Atty. Gen.), Hartford, Conn. of counsel), for defendants-appellees.

Before MESKILL, PIERCE, and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

In this § 1983 action, plaintiff-appellant Arthur Davis alleges that he is entitled, under Connecticut law, to be sentenced to a minimum term of imprisonment of from ten to twenty-five years for each of six consecutive life sentences which he is presently serving. Davis asserts that his due process rights were violated when a state prison official determined that his "minimum sentence" on each count was twenty-five years; he claims that he is entitled to have a judge make this determination.

In an earlier appeal, we reversed an order of the United States District Court for the District of Connecticut which granted a motion for summary judgment by the defendants and we remanded the matter. *Davis v. Bryan*, 810 F.2d 42 (2d Cir.1987). Upon an expanded record, the district court, José A. Cabranes, Judge, has granted summary judgment. Davis appeals from this determination and, since we find that Davis is not entitled to be sentenced to a minimum term of less then twenty-five years, we affirm the district court.

## BACKGROUND

While familiarity with our prior decision is assumed, we restate the undisputed facts.

On November 16, 1966, Davis was convicted in Connecticut by a three-judge state court of six counts of murder in the first degree. The next day he was sentenced to death pursuant to Conn. Gen. Stat. § 53–10.[1] The conviction and sentence were affirmed after direct appeal to the Connecticut Supreme Court. *State v. Davis*, 158 Conn. 341, 260 A.2d 587 (1969) (*"Davis I"*).

In 1969, Connecticut revised its penal code, including the statutes regarding sentencing. Pub. Act No. 69–828 (codified, as amended, at Conn.Gen.Stat.Ann. § 53a–1 *et seq.* (West 1985)). The revised penal code was expressly made applicable to crimes committed on or after October 1, 1971. Conn.Gen.Stat.Ann. § 53a–2 (West 1985). In 1972, § 53a–35, adopted as part of this revision, provided that murder was punishable with either the death penalty or an indeterminate sentence, imposed by the court, consisting of a minimum term of from ten to twenty-five years and a maximum term of life in prison. Pub. Act No. 71–871, § 13 (codified, as amended, at Conn.Gen.Stat.Ann. § 53a–35(b), (c) (West 1985)).

---

**1.** Section 53–10 provided in relevant part:
Any person who commits murder in the first degree ... shall suffer death unless the jury recommends imprisonment in the State Prison for life. If the person accused elects to be tried by the court and is found guilty ... the court may, in its discretion, imprison such person ... for life.

Conn.Gen.Stat. § 53–10 (Rev. to 1966). This provision had been amended in 1963 to eliminate, retroactively, the requirement that any life sentence imposed be "without benefit of release as provided in sections 18–7, 18–26 and 54–125." *See* Conn.Gen.Stat.Ann. § 53–10a (West 1985).

In the wake of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court granted certiorari in over 100 cases in which the death penalty had been imposed. This included appellant's case. *See Davis v. Connecticut,* 408 U.S. 935, 92 S.Ct. 2856, 33 L.Ed.2d 750 (1972) (*"Davis II"*). In each case, the Supreme Court vacated the imposition of the death penalty and remanded for further proceedings. *See* 408 U.S. 933–40 (1972) (citing *Stewart v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972)).

The Connecticut Supreme Court, in turn, remanded the case to the Superior Court "for further proceedings and the imposition of penalty." *State v. Davis,* 163 Conn. 642, 316 A.2d 512, 512 (1972) (*"Davis III"*). On November 16, 1972, a three-judge panel of the Superior Court resentenced Davis to consecutive terms of life imprisonment on each of the six counts of murder. The mittimus transmitted to the Commissioner of Corrections, which is the only evidence of the re-sentencing proceedings that has been produced, does not state the statutory basis for these "straight life" sentences.

In 1980, the Connecticut sentencing statute was again revised, this time to provide for definite sentences for felonies committed on or after July 1, 1981. Pub. Act No. 80–442, § 10 (codified at Conn.Gen.Stat. Ann. § 53a–35a (West 1985)). In conjunction with this revision, § 53a–35(a) was amended to provide that indeterminate sentencing was required for "any felony committed prior to July 1, 1981." Pub. Act No. 80–442, § 9.

In December 1984, the Superior Court held that all Connecticut prisoners serving life sentences were entitled to benefit from a 1980 amendment to Conn.Gen.Stat. § 54–125 [2] which eliminated a restriction on the amount of good time credit they could earn. *Ray v. Warden,* No. 296657 (Super. Ct. Dec. 7, 1984). In applying the amendment retroactively, the court relied on the application of Conn.Gen.Stat. § 18–7 to prisoners sentenced "prior to October 1, 1976." *Id.,* slip op. at 4.

In January 1985, defendant-appellee Kay Bryan, a records supervisor at the Connecticut Correctional Institution at Somers, recalculated Davis' sentence time as part of her effort to identify prisoners who could benefit from the *Ray* decision. In the course of calculating appellant's parole eligibility Bryan treated the minimum term of imprisonment on each of Davis' life sentences as twenty-five years.

On January 25, 1985, Bryan sent her calculations to Davis. In a memorandum, she informed Davis that *Ray* "allows the computation on [sic] the minimum portion of your sentence to be computed as 25 year [sic] less all possible good time [credits]." Attached to this memorandum was a "Time

---

**2.** Prior to 1976, § 54–125 provided that individuals sentenced to life imprisonment would be eligible for parole after serving twenty-five years, less any good time credits. In *Kimbro v. Manson,* 30 Conn.Supp. 20, 295 A.2d 569 (Super. Ct.1972), the court recognized that it was problematic, "[w]hether [§ 54–125] (with relation to life-term prisoners convicted for offenses committed after October 1, 1971) is in conflict with the provisions of the new Penal Code (effective as of that date) so far as automatic eligibility for parole is concerned...." 295 A.2d at 572 n. 1.

In 1976, the legislature adopted a "technical amendment" to § 54–125 which clarified that an inmate serving an indeterminate sentence with a maximum term of life imprisonment would be eligible for parole upon the expiration of his minimum sentence. Pub. Act No. 76–336, § 7; *see* H–178 *Conn. Gen. Assembly House Proceedings* 2727 (1976) (statement of Rep. Clark) ("there is a serious question without the technical amendment whether anybody sentenced to a life term with a minimum sentence of less than

25 years would ever be paroled or would ever be eligible for parole"). Thus, § 54–125 currently provides:

Any person confined for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, having been in confinement under such sentence for not less than the minimum term imposed by the court, less such time as may have been earned under the provisions of section 18–7, may be allowed to go at large on parole in the discretion of the panel of the board of parole ... if (1) it appears ... that there is a reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society.

Conn.Gen.Stat.Ann. § 54–125 (West 1985).

Since we find that appellant was properly sentenced under § 53–10, the 1976 amendment is irrelevant to our present consideration.

Sheet" which she had completed. This form indicated that Davis had been sentenced to an "Indeterminate" sentence consisting of a "sentenced minimum" of 150 years and a "sentenced maximum" of life.

On January 31, 1985, Davis wrote to Warden George Bronson complaining that the records office had imposed a minimum sentence of twenty-five years on each of his life sentences. He argued that the 1980 amendment of § 53a–35 had served to "vacate[ ]" his straight life sentence and that he was entitled to be re-sentenced.

Warden Bronson responded on February 5, 1985. He noted that "[a] sentence of 'Life' has always been computed as a sentence of 25 years to Life, less a maximum good time credit of five (5) years." Bronson stated that although the 1976 amendment of § 54–125 had deleted reference to the twenty-five year minimum parole date on "straight life" sentences, the Department of Corrections was permitted to continue using the twenty-five year minimum under Conn.Gen.Stat. § 1–1(t).[3]

Dissatisfied with the response he received from the prison officials, Davis commenced the instant action seeking damages and declaratory and injunctive relief.

Upon remand from this court, the action was rereferred to Magistrate Margolis. Court-appointed counsel filed an amended complaint and defendants moved for summary judgment. On January 10, 1989, Magistrate Margolis recommended that defendants' motion be granted; Judge Cabranes adopted this recommendation on February 10, 1989. The present appeal followed.

### DISCUSSION

A state prisoner has a due process interest in having the correct sentence imposed by the appropriate authority. *See generally King v. Hoke*, 825 F.2d 720, 724–

25 (2d Cir.1987) (habeas corpus granted where judge probably held incorrect view of applicable parole law when sentencing petitioner); *Burge v. Butler*, 867 F.2d 247, 250 (5th Cir.1989) (habeas petition granted where sentence given was not available under law applicable at time crime was committed); *Wasko v. Vasquez*, 820 F.2d 1090 (9th Cir.1987) (habeas relief available where Department of Corrections increased petitioner's prison term in contravention of state's sentencing statute).

Davis contends that his due process rights were violated when *Bryan* "imposed" the highest possible minimum sentence available under § 53a–35 and urges that his minimum sentence should have been determined by a judge. In order to prevail on this claim, Davis must establish both that he was entitled to be sentenced under § 53a–35 and that Bryan impermissibly treated his "straight life" sentences as requiring a twenty-five year minimum.

It is clear that, in 1966, when Davis committed his crimes and was tried, convicted and sentenced, § 53–10 was the applicable statute. While the Supreme Court's remand in 1972 necessitated that Davis' case be re-opened for re-sentencing, we do not view this remand as entitling him to be sentenced under § 53a–35 which had been adopted during the interim.

Section 53a–2 provides that the 1971 revision of Connecticut's penal code is applicable to offenses committed after October 1, 1971 "unless otherwise expressly provided or unless the context otherwise requires."[4] *See* Comm'n to Revise Crim. Statutes, 1971 Comments to § 53a–2 (West 1985) (section "makes clear that the Code *only* applies to offenses committed on or after October 1, 1971") (emphasis added). We decline to accept Davis' invitation that we construe

---

3. Conn.Gen.Stat. § 1–1(t) provides:

   The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed.

   Conn.Gen.Stat.Ann. § 1–1(t) (West 1988).

4. Section 53a–2 provides:

   The provisions of this title shall apply to any offense defined in this title or in the general statutes, unless otherwise expressly provided or unless the context otherwise requires, and committed on or after October 1, 1971, and to any defense to prosecution for such an offense.

   Conn.Gen.Stat.Ann. § 53a–2 (West 1985).

the portion of § 53a–2 which leaves open the possibility that the revised penal code might *not* apply to some offenses committed after October 1, 1971 as a grounds for finding that, in certain circumstances, it *must* be applied to offenses committed prior to the effective date.

Indeed, in 1969 the Connecticut General Assembly established a committee to consider parole and especially the parole eligibility of prisoners serving life sentences. House Jt. Res. 292, 1969 Sess. of the Gen. Assembly. In 1971, this Committee recommended that § 53a–35 be amended "to include within its scope all prisoners currently serving life sentences in Connecticut." *Legislative Committee on Parole Eligibility, Report to the 1971 Sess. of the Gen. Assembly* 6 (1971). The legislature, however, reenacted the revised penal code without this recommended expansion. *Cf. Kimbro*, 295 A.2d at 573 & n. 2 (discussing legislature's failure to revise § 54–125 in light of Committee's recommendation).

Additionally, Connecticut courts have stated that the 1971 penal code should not be applied retroactively. In *State v. Pastet*, 169 Conn. 13, 363 A.2d 41 ("*Pastet III*"), *cert. denied*, 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975), a defendant who had been sentenced to the death penalty was re-sentenced after *Furman* to life in prison. Pastet appealed arguing that the Superior Court lacked the authority to impose this sentence which was only available under § 53–10 if the jury recommended it. 363 A.2d at 45. The Connecticut Supreme Court held that since *Furman* deprived the jury of "the power to recommend life imprisonment in its discretion," this penalty was required on re-sentencing "as the only punishment prescribed for first degree murder ... which remained constitutionally intact." *Id.* at 46 (citing cases from other jurisdictions).

While noting that Pastet had not argued that he was entitled to be re-sentenced under § 53a–35, the court clearly stated that "while § 53–10 was repealed by the legislature ... offenses committed prior to the effective date of the repealing statute were still punishable under the prior provi-

sion." *Id.; see also State v. Cofone*, 164 Conn. 162, 319 A.2d 381, 383 (1972) (appeal of murder conviction decided after *Furman;* "[a]s the defendant ... was sentenced under § 53–10 ... which ... allowed unconstitutionally broad discretion in determining whether the death sentence should be imposed, the case must be remanded *for the limited purpose of resentencing the defendant to a term of life imprisonment.*") (emphasis added) (citing *Davis III; State v. Delgado*, 163 Conn. 641, 297 A.2d 75 (1972)).

The *Pastet III* court noted that the savings clause of § 1–1(t) mandated the application of those parts of the repealed statute that had not been struck down. 363 A.2d at 46 (citing, *inter alia, United States v. Reisinger*, 128 U.S. 398, 401, 9 S.Ct. 99, 100, 32 L.Ed. 480 (1888)); *see also State v. Pastet*, 152 Conn. 81, 203 A.2d 287, 288–89 (1964) ("*Pastet I*") (affirming conviction and refusing to apply retroactively an amendment to § 53–10 which was enacted after trial); *State v. Ruiz*, 171 Conn. 264, 368 A.2d 222, 231 (1976) (defendant commits crime and is tried, convicted and sentenced prior to effective date of repealing statute; under § 1–1(t) "the repeal of an act does not affect any punishment incurred before the repeal takes effect"); *cf. State v. Carbone*, 172 Conn. 242, 374 A.2d 215, 223, *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977) (where statute is repealed after the commission of crime but before the information is brought, "[s]ince the defendant was liable to prosecution at the date of repeal, [Conn. Gen.Stat.] § 54–194 preserves that liability."). This interpretation is supported by authorities interpreting similar savings statutes. *See, e.g., State v. Matthews*, 131 Vt. 521, 310 A.2d 17, 20 (1973) ("Criminal liability is incurred when the criminal act is committed."); *Patrick v. Commissioner of Correction*, 352 Mass. 666, 227 N.E.2d 348, 351 (1967) (same); *State v. Alley*, 263 A.2d 66, 68–69 (Me.1970) (same; collecting cases); *see also Bradley v. United States*, 410 U.S. 605, 607–10, 93 S.Ct. 1151, 1153–55, 35 L.Ed.2d 528 (1973) (savings clause leaves prosecution unaffected through the completion of sentencing; defendant may

not benefit from amendments which become effective between the commission of the crime and the time of sentencing).

Davis argues that while § 1–1(t) compelled application of § 53–10 to Pastet's re-sentencing, it did not apply to his own case. Davis asserts that Pastet's prosecution was "pending" at the time *Furman* necessitated re-sentencing since after Pastet had been sentenced to death he was found to be insane and was hospitalized. *See State v. Pastet*, 164 Conn. 669, 298 A.2d 784, 785 (1972) (*"Pastet II"*) (Superior Court retained jurisdiction to hear a motion to vacate death penalty as a result of determination of insanity). Davis argues that his prosecution, by contrast, had terminated in 1969 when the Connecticut Supreme Court affirmed his conviction. He claims that since his prosecution was no longer "pending" § 1–1(t) did not compel the application of § 53–10 to his re-sentencing.

We decline to assign significance to this distinction. First, the language of § 1–1(t) is disjunctive: it applies *either* to prosecutions pending at the time a statute is repealed *or* to penalties incurred before the repeal takes effect. Further, adopting Davis' interpretation would permit a *convicted* person who fortuitously obtains re-sentencing to benefit from an amendment to the penal code which becomes effective after he committed his crime but would deny this same benefit to a defendant charged with committing a crime at the same time but who was still awaiting trial.

Davis notes that § 53a–35(a) was amended by Public Act No. 80–442, § 9 and now requires indeterminate sentencing "[f]or any felony committed prior to July 1, 1981." Davis asserts that the legislature failed to limit this provision to felonies committed after October 1, 1971 and thus created an independent entitlement to a judicially imposed indeterminate sentence.

We agree with Magistrate Margolis, however, that § 53a–2 provides the limitation which appellant claims is absent. It is clear to us that the indeterminate sentencing requirements found in § 53a–35 apply only to those crimes committed between October 1, 1971 and June 30, 1981. As the magistrate noted, any other interpretation of the 1980 revision to § 53a–35 would mean that every defendant sentenced under the pre–1971 penal code would be entitled to be re-sentenced to an indeterminate sentence.

We find it improbable that the legislature intended to impose such a burden on the Connecticut courts. We find it even more unlikely that the legislature would intentionally impose this burden not at the time it created the system of indeterminate sentencing in 1971 but when it abolished that system in 1980. Davis does not identify, and our own research does not reveal, any legislative history which supports this interpretation.

We conclude, for purposes of addressing this § 1983 claim, that it was proper to sentence Davis under § 53–10, and we find nothing in that statute which creates a liberty interest protected by the due process clause.[5] Since Davis was not entitled constitutionally to an indeterminate sentence, we see no basis for finding that the highest possible minimum sentence was impermissibly invoked or that Bryan usurped a judicial function.

Finally, we see no impropriety in Bryan's calculations. Rather, under the applicable version of § 54–125 she was justified in treating Davis' straight life sentences as requiring that, on each, he serve a minimum of twenty-five years less appropriate good time credits. *See Holmquist v. Manson*, 168 Conn. 389, 362 A.2d 971 (1975) (inmate sentenced to life imprisonment as result of 1970 conviction entitled to parole after 25 years less credits earned for good time and for jail time).

A motion for summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Finding no issues of fact in dispute herein, and

---

**5.** Indeed, at argument counsel conceded that if Davis was properly sentenced under § 53–10 no constitutional deprivation could be found.

concluding that defendants are entitled to judgment as a matter of law, we affirm the district court's order granting defendants' motion for summary judgment.