BRUCE WILLIAMS, JR. *v.* GEORGE D. BRONSON, WARDEN, STATE PRISON

ARTHUR HYDE *v.* GEORGE D. BRONSON, WARDEN, STATE PRISON

DOMINIC VINCENZO *v.* GEORGE D. BRONSON, WARDEN, STATE PRISON
(8995)

NORCOTT, FOTI and LAVERY, Js.

---

Argued January 16—decision released May 14, 1991

*David L. Kent,* for the appellants (petitioners).

*Richard T. Biggar,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (respondent).

FOTI, J. This is an appeal from the denial of the petitioners' applications for writs of habeas corpus.[1] The petitioners claimed violations of their statutory and constitutional rights to have a variety of statutory credits applied to the maximum portion of their indeterminate life sentences. The habeas court concluded that there were no violations of the petitioners' rights and, therefore, dismissed the applications.

The petitioners claim that the habeas court improperly failed (1) to order the respondent to apply jail time and good time credits to the maximum term of the petitioners' sentences, (2) to find a violation of the petitioners' constitutional right to equal protection under the law, (3) to find a violation of the petitioners' right to procedural due process, and (4) to find a violation of the petitioners' fundamental right to liberty under the sentence reduction act. We disagree with each of these claims and affirm the judgment of the habeas court.

Examination of the record discloses that the petitioners are in the custody of the respondent at the Connecticut Correctional Institution at Somers. Each of the petitioners was sentenced prior to July 1, 1981, pursuant to General Statutes § 53a-35 (b) (1); petitioners Bruce Williams and Dominic Vincenzo received an indeterminate term of twenty years to life, and petitioner Arthur Hyde received a term of twenty-five years to life. Vincenzo, sentenced on August 13, 1974, is currently serving his maximum term of imprisonment. Each of the petitioners has been given good time credits under General Statutes §§ 18-7[2]

---

[1] The three habeas corpus petitions were consolidated and the habeas court filed a single memorandum of decision.

[2] General Statutes § 18-7 provides in pertinent part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years;

and 18-7a[3] on the minimum portion of his sentence but none on the maximum portion, life imprisonment. Each has been credited with presentence credit and presentence good time pursuant to General Statutes §§ 18-98[4] and 18-98c[5] on the minimum but not on the maximum

and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. . . ."

[3] General Statutes § 18-7a provides in pertinent part: "(a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee."

[4] General Statutes § 18-98 provides: "Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned for an offense committed prior to July 1, 1981, is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

[5] General Statutes § 18-98c provides: "In addition to the time credits provided for in sections 18-97 and 18-98, any person who has been denied bail or who has been unable to obtain bail and who subsequently is fined or sen-

portion of his sentence. Each has received or is eligible to receive employment credit pursuant to General Statutes § 18-98a[6] and the outstandingly meritorious performance award pursuant to General Statutes § 18-98b[7] only as to the minimum term of imprisonment.

tenced to a correctional institution or a community correctional center shall receive a good conduct credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended, such credits to be at the rate of ten days for each month of presentence confinement and such credits to be awarded only for prompt obedience to the rules of the correctional institution or community correctional center wherein the person is confined. The provisions of this section allowing credit at the rate of ten days for each month of presentence confinement shall apply to those periods of time spent in presentence confinement pursuant to sections 18-97 and 18-98, which occur after October 1, 1976, for an offense committed prior to July 1, 1981."

[6] General Statutes § 18-98a provides: "Each person committed to the custody of the commissioner of correction who is employed within the institution to which he was sentenced, or outside as provided by section 18-100, for a period of seven consecutive days, except for temporary interruption of such period as excused by the commissioner for valid reasons, may have one day deducted from his sentence for such period, in addition to any other earned time, at the discretion of the commissioner of correction."

[7] General Statutes § 18-98b provides: "In addition to any commutation or diminution of sentence or any meritorious time service award which may have been granted under section 18-7 or 18-53 any inmate committed to the custody of the commissioner of correction for a definite term, or for a term with a minimum sentence imposed, may have not more than one hundred and twenty days deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the commissioner of correction for exceptional personal achievement, accomplishment and other outstandingly meritorious performance, provided any serious act of misconduct or insubordination or refusal to conform to institution regulations ocurring at any time during his confinement shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all, or any portion, of any time awarded under this section. When any prisoner is held under more than one conviction the several terms of imprisonment imposed thereunder shall be construed as one continuous term for purposes of determining eligibility for any outstandingly meritorious performance award authorized by this section."

## I

The petitioners first argue that the law mandates that jail time and good time credits be applied to the maximum term of their sentences and that the habeas court's failure to order such an application was improper.

The petitioners were sentenced for crimes committed prior to July 1, 1981, pursuant to General Statutes § 53a-35 et seq., which provides in part: "IMPRISONMENT FOR ANY FELONY COMMITTED PRIOR TO JULY 1, 1981: INDETERMINATE SENTENCES; MAXIMUM AND MINIMUM TERMS. (a) For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d).

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment; (2) for a class B felony, a term not to exceed twenty years; (3) for a class C felony, a term not to exceed ten years; (4) for a class D felony, a term not to exceed five years; (5) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime; and (6) for a capital felony, life imprisonment unless a sentence of death is imposed in accordance with section 53a-46a.

"(c) Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years; (2) for a class B, C or D felony the court may fix a mini-

mum term of not less than one year nor more than one-half of the maximum term imposed . . . ."

The indeterminate sentencing scheme used prior to July 1, 1981, allowed the court to set both the minimum and maximum portion of the sentence; General Statutes §§ 53a-35 (c) and 53a-35 (b); parole eligibility is established at the minimum less any good time used to reduce that minimum term. General Statutes §§ 18-7, 53a-35 (c) and 54-125. The minimum and maximum portions of the sentence are a fixed number of years except for a class A felony where the maximum is life imprisonment, unless for a capital felony where a sentence of death may be imposed.

The definite sentencing scheme for crimes committed on or after July 1, 1981, allowed the court to impose a flat or exact term of years of imprisonment without a minimum or maximum; that term could be reduced by various statutory credits. Under the present definite sentencing scheme, life imprisonment is defined as sixty years. General Statutes § 53a-35b. All sentence credits apply to reduce the sixty years.

The petitioners claim that it is clear from the plain language of the applicable statutes that not only is it contemplated that the maximum portion of their respective sentences should be reduced, but it is mandated. They rely on *Holmquist* v. *Manson,* 168 Conn. 389, 362 A.2d 971 (1975), to argue that General Statutes §§ 18-97[8] and 18-98 expressly apply to any per-

---

[8] General Statutes § 18-97 provides: "Any person receiving a fine or a sentence to a correctional institution or a community correctional center for an offense committed prior to July 1, 1981, shall receive credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such fine or sentence is imposed, provided he shall conform to the rules of the institution. Upon notification from the commissioner of correction, the clerk of the court shall enter such credit upon the order in the

son absent any indication intended to exclude those sentenced to life. The petitioners also contend that §§ 18-7 and 18-7a expressly apply to "any person" and "any prisoner" respectively and do not exclude inmates serving life sentences, with § 18-7a specifically applying to both the minimum and the maximum term.

Although *Holmquist* dealt with the minimum term of the sentence for parole purposes under the provisions of General Statutes § 54-125, it did not involve the issue of the applicability of various statutory credits toward the maximum or life imprisonment portion of that sentence, nor was any such argument implied by its language.

Our Supreme Court has consistently held that if a statute is clear and unambiguous, there is no room for construction. *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987); *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985). For certain crimes committed prior to July 1, 1981, General Statutes § 53a-35 (b) is clear and unambiguous in requiring that the maximum term be life imprisonment, which, practically speaking, means natural life unless paroled.

Although we need not engage in statutory interpretation, we note that there is no conflict in the statutes to which the petitioners direct us. "This is so because '[i]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling.' " *Moscone* v. *Manson,* 185 Conn. 124, 133–34, 440 A.2d

case of a fine, and upon the mittimus in the case of a sentence and it shall be the duty of the agency or person that held such person under such mittimus to inform the clerk of the court of the proper amount of such credit. In the case of a fine each credit day shall be computed at the rate of ten dollars. In no event shall credit be allowed in excess of the fine or sentence actually imposed."

848 (1981). In addition, "[t]he provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." *General Electric Credit Corporation* v. *James Talcott, Inc.*, 271 F. Sup. 699, 705 (S.D.N.Y. 1966), quoted in *Moscone* v. *Manson*, supra, 134.

Although it is true that the legislature in enacting a law is presumed to have intended to make it one consistent body of law; *Frazier* v. *Manson*, 176 Conn. 638, 642, 410 A.2d 475 (1979); the mere failure of the legislature explicitly to exclude a group of individuals from receiving certain statutory credits that were designated to apply to another group does not compel the conclusion that the credits should be mandatorily applied to both groups.

## II

The petitioners next challenge the trial court's holding that the failure to apply such credits to their maximum term of sentence does not violate their constitutional right to equal protection of the law.[9] They claim a deprivation of equal protection with respect to both other prisoners sentenced to indeterminate terms with maximum terms other than life, and to those serving flat life sentences of sixty years for crimes committed after July 1, 1981.

Our Supreme Court has noted that " '[t]he legislature, cognizant of the constitutional guarantees of equal protection, must be deemed to have sought to attain

---

[9] The petitioners claim a violation of their right to equal protection of the law as guaranteed by the fourteenth amendment to the constitution of the United States and article first, § 20, of the Connecticut constitution. The provisions of both have the same meaning and impose similar constitutional limitations, and therefore may be considered together. *Plourde* v. *Liburdi*, 207 Conn. 412, 418, 540 A.2d 1054 (1988).

a rational and sensible result that avoids placing a statute in constitutional jeopardy.' . . ." (Citations omitted.) *Murray* v. *Lopes,* supra, 36. Where the statute does not involve fundamental rights, the standard to be used in assessing an equal protection claim is the traditional rational basis test. *Plourde* v. *Liburdi,* 207 Conn. 412, 419, 540 A.2d 1054 (1988). In such cases, the legislation will withstand constitutional attack if the distinction is founded on a rational basis. *Frazier* v. *Manson,* supra, 645.

There is an obvious distinction as to each class of prisoners that the petitioners claimed deprived them of equal protection. There is also an obvious rational basis for each distinction. As for prisoners sentenced for crimes committed prior to July 1, 1981, who did not receive a maximum term of the life imprisonment as part of their sentences, the rational basis for the distinction consists of the difference in sentences and in the nature of the crimes committed by the petitioners and those of other inmates whose crimes have not been deemed by our legislature as serious as the petitioners' crimes. The rational basis for the distinction between the petitioners and those serving a flat life sentence of sixty years imposed for crimes committed on or after July 1, 1981, pursuant to Public Acts 1980, No. 80-442, is obvious.[10] The petitioners retain parole eligibility whereas those sentenced for crimes committed after July 1, 1981, do not have such a benefit. Just as those

---

[10] General Statutes § 53a-35a provides in pertinent part: "IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life imprisonment without the possibility of release unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years . . . ."

sentenced for crimes committed after July 1, 1981, may not claim the legislative benefit of parole eligibility, the petitioners may not claim the benefit of either a sixty year definition of their life terms,[11] or credits to the maximum portion of their indeterminate sentence. By enacting Public Acts 1980, No. 80-442, the legislature comprehensively revised this state's sentencing structure by abolishing indeterminate and creating definite sentencing, a revamping that is a rational basis for the distinction that the petitioners attack. "Therefore it cannot be said that a person serving a term of imprisonment who is eligible for certain good time credits under a statute in effect at the time he was sentenced can effectively assert a 'fundamental' right to additional good time credits permitted under another statute which became effective after he was sentenced." Id., 647.

III

The petitioners next claim that the court improperly held that the failure to apply their statutory credits to the maximum portion of their sentences did not violate their right to procedural due process. It is their claim that the state's practice of not applying good time credits is the equivalent of removing earned good time credits, and therefore a violation of their fourteenth amendment right to due process, because a state created right may not be arbitrarily abrogated.

The petitioners' argument is faulty and their reliance on *Wolff* v. *McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), is misplaced. *Wolff* involved the removal of good time credits that had been earned. The petitioners would have us equate the failure to apply statutory credits with the removal of earned credits. As we have concluded earlier, the habeas court

---

[11] General Statutes § 53a-35b provides in pertinent part: "A sentence of imprisonment for life shall mean a definite sentence of sixty years . . . ."

correctly held that there was no right to various credits that should be applied to the maximum terms of the petitioners' life sentences. Because the petitioners are ineligible for those credits, their attempt to equate the failure to apply credits, with which they are not entitled, to the removal of properly earned credits must fail.

## IV

The petitioners' last claim is that the habeas court's failure to apply the statutory credits to the maximum portion of their life sentences violates their fundamental right to liberty under the sentence reduction statutes. They claim, because it is impossible to apply the earned sentence reduction credits to their maximum sentences because there is no numerical value assigned to life imprisonment under General Statutes § 53a-35 (b) (1), that being sentenced under that statute impinges on their fundamental right to liberty under the sentence reduction statutes without any showing of a compelling state interest.

As previously discussed, the petitioners were sentenced under General Statutes § 53a-35 (b) (1), the statutory scheme in place on the date of the respective commission of their crimes. They were sentenced to a maximum of life imprisonment and may be released or discharged only through parole. Their claim of a violation of a fundamental right to liberty is without merit since they are not entitled to the benefits of the sentence reduction statutes to the maximum portion of their sentences under that statutory scheme.

The judgment is affirmed.

In this opinion the other judges concurred.