# HAROLD W. MEAD *v.* COMMISSIONER OF CORRECTION
## (SC 17632)

Borden, Norcott, Palmer, Zarella and Sullivan, Js.

Argued October 19, 2006—officially released May 8, 2007

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

SULLIVAN, J. The petitioner, Harold W. Mead, appeals[1] from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims on appeal that the habeas court improperly concluded that General Statutes § 53a-35b,[2] which defines a sentence of life imprisonment as a definite sentence of sixty years, does not apply retroactively to persons who committed crimes prior to that statute's enactment. We affirm the judgment of the habeas court.

The record reveals the following facts and procedural history. On March 8, 1971, the petitioner was indicted on three counts of murder in the first degree in violation of General Statutes (Rev. to 1968) § 53-9 for offenses

---

[1] The petitioner appealed from the judgment of the habeas court to the Appellate Court where, after having heard oral argument on the appeal, the Appellate Court filed a statement with this court pursuant to Practice Book § 65-2 requesting that we transfer the appeal to this court. We granted the Appellate Court's request and thereafter heard oral argument on the appeal.

[2] General Statutes § 53a-35b provides in relevant part: "A sentence of imprisonment for life shall mean a definite sentence of sixty years . . . ."

committed on or about August 12, 1970.[3] On April 6, 1972, the petitioner changed his pleas of not guilty as to the three counts of murder in the first degree to guilty of three counts of murder in the second degree. On April 11, 1972, the petitioner was sentenced to three concurrent life sentences, under General Statutes (Rev. to 1968) § 53-11,[4] and was confined to the custody of the respondent, the commissioner of correction (commissioner), pursuant to a mittimus issued on that date. As of the date of the petitioner's crimes, a sentence of life imprisonment was regarded as a sentence of imprisonment for the duration of the defendant's natural life. General Statutes (Rev. to 1968) § 53-11.

Thereafter, as part of the Penal Code that became effective on October 1, 1971, the legislature adopted Public Acts 1969, No. 828, § 35, codified at General Statutes (Rev. to 1972) § 53a-35, which provides in relevant part that, "(a) [a] sentence of imprisonment for a felony shall be an indeterminate sentence . . . ." The statute also sets a maximum term of life imprisonment and a minimum term of not less than ten nor more than twenty-five years for a class A felony. See General Statutes (Rev. to 1972) § 53a-35 (b) and (c). In 1980, as part of the legislature's comprehensive revision of the state's sentencing structure abolishing indeterminate sentencing and creating definite sentencing, the legislature enacted § 53a-35b and amended § 53a-35 (a) to provide in relevant part: "For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence . . . ." Public Acts 1980, No. 80-442, § 9, now codified at General Statutes § 53a-35 (a). Accordingly, the commissioner recalculated the

---

[3] The underlying facts, which are not necessary to the resolution of this appeal, are summarized at *Meade* v. *Warden*, 184 Conn. 597, 599, 440 A.2d 246 (1981).

[4] General Statutes (Rev. to 1968) § 53-11 provides in relevant part: "Any person who commits murder in the second degree . . . shall be imprisoned in the [s]tate [p]rison during his life."

petitioner's sentence for murder, a class A felony,[5] from a sentence of life imprisonment to an indeterminate sentence with a minimum term of twenty-five years and a maximum term of life imprisonment pursuant to General Statutes § 53a-35.

Accounting for statutory good time credits, jail credit, and earned seven day job credit, the twenty-five year minimum portion of the petitioner's sentence expired on February 25, 1985, making him parole eligible on that date.[6] The petitioner was first denied parole on April 2, 1985, and subsequently denied parole on six more occasions.[7] The petitioner's next parole eligibility date is 2011.

On January 15, 2004, the petitioner filed the present second amended petition for a writ of habeas corpus.[8] The petition alleges, in relevant part, that the commissioner's custody of the petitioner is unlawful because the commissioner has not calculated the petitioner's sentence of life imprisonment in accordance with the current version of § 53a-35b, which provides in relevant part that "[a] sentence of imprisonment for life shall

---

[5] General Statutes § 53a-54a provides in relevant part: "(c) Murder is punishable as a class A felony . . . ."

[6] Under General Statutes § 54-125, prisoners confined for an indeterminate sentence are eligible for parole after they have served not less than the minimum term of their sentence. Although prisoners are eligible to earn statutory credits applicable to the minimum portion of their indeterminate sentences, prisoners are not eligible to have earned statutory credits applied to the maximum term of an indeterminate life sentence. *Williams* v. *Bronson*, 24 Conn. App. 612, 623, 590 A.2d 984, cert. denied, 219 Conn. 913, 593 A.2d 138 (1991).

[7] The petitioner also was denied parole on March 21, 1989, April 9, 1991, May 4, 1993, May 9, 1995, June 5, 1997, and November 1, 2001.

[8] The petitioner first filed his petition for a writ of habeas corpus on June 3, 2002. Thereafter, the petitioner filed a first amended petition for a writ of habeas corpus on November 10, 2003, followed by a second amended petition on January 15, 2004. It is undisputed that the petitioner's second amended petition is the operative petition for purposes of the present appeal. Accordingly, all references to the petitioner's petition for a writ of habeas corpus pertain to the second amended petition, unless noted otherwise.

mean a definite sentence of sixty years . . . ." The petitioner seeks a recalculation of his life sentence to a definite sentence of sixty years, and the reduction of such sentence by all applicable credits, pursuant to General Statutes § 18-7.[9] The commissioner opposed the petition on the grounds that § 53a-35b does not apply retroactively to the petitioner's sentence, and that the petitioner is serving the correct indeterminate sentence of twenty-five years to life imprisonment.

Following a hearing on March 9, 2004, on the parties' cross motions for summary judgment, the habeas court issued a memorandum of decision on May 20, 2004. The court, relying in part on *Williams* v. *Bronson*, 24 Conn. App. 612, 622, 590 A.2d 984, cert. denied, 219 Conn. 913, 593 A.2d 138 (1991), concluded that the enactment of P.A. 80-442 was part of a comprehensive revision of this state's sentencing structure that altered substantive, rather than procedural rights. The court noted that statutes that affect substantive rights are presumed to apply prospectively only. Finding no clear and unequivocal expression by the legislature rebutting the presumption of prospective application, either in the text of § 53a-35b or in its relationship to other statutes, the habeas court concluded that § 53a-35b did not apply to the petitioner's current controlling sentence. The habeas court granted the commissioner's motion for summary judgment, denied the petitioner's motion for summary judgment, and, accordingly, rendered judgment denying the petition for a writ of habeas corpus.

The petitioner appealed to the Appellate Court challenging the habeas court's denial of his petition for a writ of habeas corpus, claiming that the habeas court

[9] General Statutes § 18-7 provides in relevant part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence . . . ."

improperly concluded that § 53a-35b does not apply retroactively to persons sentenced prior to that statute's enactment. The Appellate Court heard oral argument on the appeal on February 7, 2006. Thereafter, the Appellate Court ordered the parties to file supplemental briefs addressing what effect, if any, this court's decision in *State* v. *Skakel*, 276 Conn. 633, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006), had on the application of §§ 53a-35 and 53a-35b. After the filing of the supplemental briefs, the Appellate Court panel moved, pursuant to Practice Book § 65-2,[10] that this appeal be transferred to the Supreme Court. We granted the motion on March 17, 2006, and thereafter heard oral argument on the appeal.

We conclude that § 53a-35b affects substantive rights and, in the absence of any clear and unequivocal expression by the legislature rebutting the presumption of prospective application, that the statute does not apply retroactively to persons sentenced prior to its enactment. Accordingly, we affirm the judgment of the habeas court.

As a preliminary matter, we set forth the appropriate standard of review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003). Whether a legislative act applies retroactively is a question of law over which

---

[10] Practice Book § 65-2 provides in relevant part: "If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer and shall promptly decide whether to transfer the case to itself."

this court has plenary review. *State* v. *Nowell*, 262 Conn. 686, 701, 817 A.2d 76 (2003).

When considering the retroactivity of a penal statute, "[i]t is axiomatic that, [w]hether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In seeking to discern that intent, [o]ur point of departure is . . . [General Statutes] § 55-3,[11] which . . . we have uniformly interpreted . . . as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The [l]egislature only rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . As a corollary to this principle, we also have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Citations omitted; internal quotation marks omitted.) *State* v. *Skakel,* supra, 276 Conn. 679–81.

In *State* v. *Quinet*, 253 Conn. 392, 411–12, 752 A.2d 490 (2000), we considered the retroactivity of Public Acts 1995, No. 95-142, § 2, which amended General Statutes (Rev. to 1995) § 53-29 (e), to require the imposition of a probationary term of not less than ten years and not more than thirty-five years for certain serious sexual offenses. The amendment increased the maximum probationary period of five years previously allowed under § 53-29. Expressing concern that applying the new stat-

---

[11] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

ute retroactively would violate the ex post facto clause of the United States constitution by exposing the defendant to a longer probationary period, we refused to give retroactive effect to a change in the state's probationary structure. Id., 414–16. Thus, we concluded that changes in the structure of probation, an alternative form of sentencing, affect substantive rights.

In *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 805–807, 786 A.2d 1091 (2002), we considered the retroactivity of Public Acts 1995, No. 95-255, § 1 (P.A. 95-255), now codified at General Statutes § 54-125a. Prior to P.A. 95-255, certain violent offenders were eligible for parole upon completion of 50 percent of their sentence, whereas after the amendment, persons convicted of offenses involving the use, attempted use or threatened use of physical force against another person were not parole eligible until they had served 85 percent of their sentence. General Statutes § 54-125a (b). Finding no clear expression of legislative intent for the statute to apply retroactively, and expressing concerns about ex post facto violations, we refused to give retroactive effect to the 85 percent requirement. *Johnson* v. *Commissioner of Correction*, supra, 828–29. Thus, we concluded that changes in the eligibility for parole, a part of the state's sentencing scheme, affect substantive rights.

With these cases in mind, we conclude that, contrary to the petitioner's claim, § 53a-35b is a substantive statute.[12] Like the statutes at issue in *Quinet* and *Johnson*, § 53a-35b defines and regulates the length of time that a prisoner is deprived of his liberty. The statute does not merely tell the commissioner how to administer an

[12] On two previous occasions, the Appellate Court, without analysis, has refused to apply § 53a-35b retroactively to persons sentenced prior to its enactment. See *Glenn* v. *Commissioner of Correction*, 80 Conn. App. 273, 274 n.1, 836 A.2d 435 (2003) (per curiam); *Williams* v. *Bronson*, supra, 24 Conn. App. 622.

existing right, but, instead, governs the right that the commissioner must administer. Accordingly, the statute presumptively does not apply retroactively.

The presumption that § 53a-35b has only prospective effect can be overcome only by a clear and unequivocal expression of legislative intent that the statute shall apply retrospectively. *State* v. *Skakel*, supra, 276 Conn. 680. The language of § 53a-53b itself is silent as to whether the legislature intended it to be applied retroactively. Accordingly, we look to the relationship of § 53a-35b to related statutes enacted as part of P.A. 80-442, which comprehensively revised this state's sentencing structure by abolishing indeterminate sentencing and creating definite sentencing. Section 53a-35a expressly provides that definite sentences shall be imposed only for felonies committed on or after July 1, 1981. The statute further provides that the penalty for the class A felony of murder is a term of imprisonment not less than twenty-five years nor more than life. General Statutes § 53a-35a (2). Prior to 1981, the term "life imprisonment" was inherently indeterminate because it referred to the natural life of the prisoner. It is reasonable to conclude, therefore, that the purpose of § 53a-35b was to define life imprisonment—the one remaining indeterminate term in the now definite sentencing scheme— as a definite sentence of sixty years. It is also reasonable to conclude that § 53a-35b applies only to post-1981 determinate sentencing.

A retroactive application of § 53a-35b would also raise some of the same concerns that troubled the United States Court of Appeals for the Second Circuit in *Davis* v. *Bryan*, 889 F.2d 445 (2d Cir. 1989). The petitioner in *Davis* claimed that he was entitled to have his pre-1971 life sentence changed to an indeterminate sentence in accordance with the provisions of the Penal Code that took effect in 1971 and were amended in 1980. Id., 448–50. The petitioner asserted that the legislature

created an entitlement to a judicially imposed indeterminate sentence by amending § 53a-35 to apply indeterminate sentencing to " 'any felony committed prior to July 1, 1981,' " and by failing to limit this provision to felonies committed after October 1, 1971. Id., 450. The court in *Davis* concluded that neither the 1971 provisions nor the 1980 amendment to § 53a-35 was retroactive, as a retroactive application of § 53a-35 would mean that "every defendant sentenced under the pre-1971 penal code would be entitled to be re-sentenced to an indeterminate sentence." Id. The court found it "improbable that the legislature intended to impose such a burden on the Connecticut courts." Id. We find it equally improbable that the legislature intended to impose such a burden on our court system by requiring that every defendant sentenced to life imprisonment prior to 1981 would be entitled to have his life sentence recalculated as a term of sixty years.

Finally, our careful review of the legislative history of § 53a-35b reveals that it is void of any clear and unequivocal expression by the legislature for § 53a-35b to apply retroactively. We therefore reject the petitioner's claim that § 53a-35b, a substantive statute, must be given retroactive application to prisoners sentenced prior to its enactment. Accordingly, we affirm the judgment of the habeas court and its conclusion that § 53a-35b affects substantive rights and must be given only prospective application.

We note that the petitioner claims for the first time in his supplemental brief that, if § 53a-35b does not apply retroactively, he should be treated as serving a definite life sentence under General Statutes (Rev. to 1968) § 53-11, and that the commissioner improperly has treated his sentence as an indeterminate sentence of twenty-five years to life imprisonment in accordance

with § 53a-35.[13] See General Statutes § 53a- 35 (a) ("[f]or any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence"). The petitioner argues that, despite the language of § 53a-35 (a), under *Davis*, the indeterminate sentencing provisions adopted as part of the Penal Code in 1969 do not apply to defendants who committed crimes before October 1, 1971. Accordingly, the petitioner contends, he should be treated as having been sentenced to a definite sentence of life imprisonment under General Statutes (Rev. to 1968) § 53-11.

We agree that the decision in *Davis* appears squarely to support the petitioner's argument. See id., 450 ("the indeterminate sentencing requirements found in § 53a-35 apply only to those crimes committed between October 1, 1971, and June 30, 1981"). We conclude, however, that we need not decide this issue which, as we noted previously, the petitioner raised for the first time in his supplemental brief and to which the commissioner has had no opportunity to respond.[14] The petitioner makes

[13] It is not entirely clear whether the petitioner argues in his supplemental brief that he is entitled to be resentenced by a judge under § 53a-35; see *Davis* v. *Bryan*, supra, 889 F.2d 448 ("[a] state prisoner has a due process interest in having the correct sentence imposed by the appropriate authority"); or is claiming that the indeterminate sentencing provisions do not apply to him in the first instance. See id., 450. A review of the transcript of the hearing before the habeas court suggests that he is making the latter claim and we treat it as such. See footnote 14 of this opinion.

[14] The petitioner stated at the hearing before the habeas court that "the parties have taken different positions as to what type of sentence [the petitioner] is serving." The commissioner argued that, if the court found that § 53a-35b was retroactive, then "[d]epending on how you calculate it, whether you treat it as a definite sentence or whether you treat it as an indeterminate sentence of twenty-five to sixty . . . if it was an indeterminate . . . and he got the credit for that, he would have been out in 2002. If you treat it as a definite sixty, we're looking at about 2012." The habeas court then observed that "[t]he actual calculation of good time really isn't before me," and both parties agreed. The court then confirmed that "both parties are essentially relieving me of the burden of having to do higher mathematics in connection with that. The sole issue that is applicable here is which definition of life is to be applied."

The habeas court found in its memorandum of decision, and assumed for the purposes of its analysis, that the defendant had been sentenced pursuant

no claim that, if we were to conclude that § 53a-35b is not retroactive, then the commissioner's treatment of his sentence as an indeterminate sentence of twenty-five years to life imprisonment under § 53a-35 instead of a definite sentence of life imprisonment under § 53-11 would have some deleterious effect on him. See *Davis* v. *Bryan*, supra, 889 F.2d 450 (although indeterminate sentencing did not apply to prisoner who committed crime in 1966, Connecticut department of correction was justified in treating petitioner's definite life sentences as requiring that he serve minimum of twenty-five years less appropriate good time credits), citing *Holmquist* v. *Manson*, 168 Conn. 389, 392, 362 A.2d 971 (1975) (prisoner sentenced to definite life sentence in 1970 was entitled to parole after twenty-five years less good time and jail time credits). Accordingly, even if we were to assume that the commissioner improperly applied § 53a-35 to the petitioner, any such impropriety necessarily would be deemed harmless because the petitioner has not claimed that he will suffer any deleterious effect as a result of serving a sentence in accordance with § 53a-35 when § 53a-35b is not given retroactive application.

The judgment of the habeas court is affirmed.

In this opinion the other justices concurred.

---

to § 53a-35 to an indeterminate sentence with a minimum term of twenty-five years and a maximum term of life. The petitioner did not challenge that finding on appeal.