RICHARD H. VALENTINE, TRUSTEE, ET AL. *v.*
MYRNA LABOW ET AL.
(AC 24483)

Schaller, Flynn and Harper, Js.*

---

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued December 5, 2005—officially released May 16, 2006

*Nathalie Feola-Guerrieri,* with whom were *Myrna LaBow,* pro se, and, on the brief, *Daniel Shepro,* for the appellant (named defendant).

*Barbara M. Schellenberg,* for the appellee (intervening plaintiff Robert Rubin).

*Gwen E. Adamson,* for the appellee (substitute plaintiff Ronald LaBow).

*Opinion*

SCHALLER, J. The defendant Myrna LaBow[1] appeals from the summary judgment rendered by the trial court in favor of the intervening plaintiff Robert Rubin.[2] On appeal, the defendant claims that the court improperly (1) granted Rubin's motion for summary judgment as to the defendant's special defenses and counterclaim, (2) denied several of her motions challenging the court's summary judgment ruling and (3) rendered judgment of partition by sale without first deciding the defendant's quiet title action. We affirm the judgment of the trial court.

The defendant's present appeal marks yet another chapter in a saga of hostilities that, for the last thirty-two years, has resulted in extensive litigation in the trial and appellate courts of Connecticut and New York. The following facts and procedural history, which are necessary for our resolution of the defendant's appeal, highlight the tortuous history of this case. On July 9, 1974, the defendant initiated a dissolution of marriage

---

[1] Several subsequent encumbrancers also were named as defendants, but they are not parties to this appeal. We therefore refer in this opinion to Myrna LaBow as the defendant.

[2] The named plaintiff, Richard H. Valentine, has been replaced in this action by Ronald LaBow, trustee, and Robert Rubin, the current owner of one half of the property in question.

action against her then husband, Ronald LaBow. At that time, the LaBows jointly owned, with rights of survivorship, twenty-nine acres of property in the towns of Weston and Fairfield. The property consists of a twenty-two acre parcel in Weston and an adjacent seven acre parcel in Fairfield.

"On November 5, 1975, while [the dissolution] action was pending, Ronald LaBow transferred his interest in the twenty-two acres in Weston to [a trust with] Richard H. Valentine [acting as] trustee. There is an ongoing dispute between the LaBows as to the validity of that trust, which was set up by Ronald LaBow as settlor. At the time the dissolution decree was issued by the court . . . on August 28, 1978, the twenty-two acres in Weston were in the trust, but Ronald LaBow still had record title to the seven acres in Fairfield. The dissolution decree . . . did not transfer title to or direct the conveyance of either parcel to [the defendant]. On September 18, 1978, after the dissolution, Ronald LaBow transferred the Fairfield property to Anthony DeVita . . . ."[3] *LaBow* v. *LaBow*, 69 Conn. App. 760, 762, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002).

Subsequently, on July 5, 1979, Valentine, acting as trustee, initiated this partition action against the defendant as to the Weston parcel. In response to the partition complaint, the defendant filed her first special defense, dated October 3, 1979, in which she claimed that the trust was "illegal, void and of no force and effect, such that [Valentine] may not prosecute" the action. On December 11, 1981, the defendant filed further special defenses and a counterclaim, in which she expressly alleged that Ronald LaBow's November 5, 1975 transfer to the trust was fraudulent.

---

[3] DeVita purchased the property from Ronald LaBow for $40,000.

In 1983, Valentine stepped down as trustee, and Ronald LaBow succeeded him in that capacity. Thereafter, Rubin, a neighbor of the LaBows, purchased the Weston parcel from the trust on January 5, 1985, as well as the Fairfield parcel from DeVita on January 16, 1985. Consequently, since January, 1985, Rubin and the defendant have owned the Weston and Fairfield parcels as tenants in common.

After Rubin acquired an interest in the properties, the defendant filed a complaint against him, dated November 12, 1985, in which she alleged that the parcels were conveyed to him fraudulently. Subsequently, Rubin joined this partition action as a party plaintiff on November 25, 1985, and on June 16, 1989, amended the partition complaint to include the Fairfield property. The record reflects that the defendant continued to file a series of revised special defenses and a counterclaim, concluding with her July 27, 1988, nine count counterclaim that alleged (1) a fraudulent conveyance from Ronald LaBow to Rubin, (2) conspiracy between Ronald LaBow and Rubin, (3) intentional infliction of emotional distress, (4) deceit that misled the defendant, (5) payment of less than the fair market value for the property, (6) that Rubin took charge of the property in disregard of the interest of the defendant in the property, (7) malice, (8) unclean hands and (9) any other relief that the court deemed proper.[4]

On December 16, 1993, Rubin filed a motion for summary judgment with respect to the partition complaint and the defendant's special defenses and counterclaim. Specifically, Rubin's motion for summary judgment alleged that the defendant's counterclaim was barred by "one or more of the following doctrines: (1) the statute of limitations contained in General Statutes § 52-

---

[4] The defendant's special defenses and counterclaim largely mirrored one another.

577; (2) laches; (3) res judicata; (4) collateral estoppel; or (5) the application of General Statutes § 46b-86 to post-judgment attempts to modify property distributions."

On February 14, 1994, the court, *Fuller, J.*, concluded that all the counts of the defendant's counterclaim were barred by "several" of Rubin's special defenses. The court explained that because a number of the defendant's claims against Rubin were based on actions committed by Rubin's grantors, these claims failed if the defendant had no valid claim to either parcel when Rubin acquired the parcels. The court concluded that the defendant had no legally cognizable claims against Rubin's grantors.

Specifically, the court determined that the first count of the defendant's counterclaim, fraudulent conveyance, was barred by the statute of limitations contained in § 52-577, as well as by the doctrine of collateral estoppel and the application of General Statutes § 46b-81 to postjudgment attempts to modify property distributions. The court further concluded that the second, fourth, fifth, sixth, seventh and eighth counts of the defendant's counterclaim failed because they were "dependent upon a colorable claim to attack the conveyance to Rubin as fraudulent"[5] and that the ninth count failed to state a cause of action. As to the third count, intentional infliction of emotional distress, the court found that Rubin's conduct was not extreme and outrageous. The court, therefore, granted Rubin's motion for summary judgment, but declined to decide whether the partition would be in kind or by sale. Accordingly, further proceedings were ordered for these purposes.

[5] The court reasoned that because "the defendant had no legal or equitable interest in either the Weston or Fairfield parcels when Rubin purchased them in 1985, her other claims, based upon the circumstances under which Rubin acquired those parcels, [are] irrelevant."

Thereafter, the defendant filed numerous motions challenging the court's summary judgment ruling. Each motion was denied, and on July 14, 2003, the court, *Stevens, J.*, rendered judgment of partition by sale. This appeal followed.[6] Additional facts will be provided where necessary.

I

The defendant first claims that the court, *Fuller, J.*, improperly granted Rubin's motion for summary judgment as to her special defenses and counterclaim. In support of her claim, the defendant argues that the court improperly determined that the first count of her counterclaim, which alleged fraudulent conveyance, was barred by (1) laches,[7] (2) collateral estoppel, (3)

---

[6] We note that this court denied the defendant's prior attempts to appeal from Judge Fuller's granting of the motion for summary judgment because that ruling was not an appealable final judgment. Specifically, Judge Fuller's decision did not decide the method of partition. *LaBow* v. *LaBow*, supra, 69 Conn. App. 763–64. Judge Stevens' subsequent judgment of partition by sale, however, constitutes an appealable final judgment. See *Mitchell* v. *Silverstein*, 67 Conn. App. 58, 60 n.4, 787 A.2d 20 (2001) ("judgment of partition by sale is an appealable final judgment"), cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002).

[7] Initially, we address the defendant's argument that the court improperly determined that her special defenses and counterclaim were barred by the doctrine of laches.

Rubin argued in the motion for summary judgment that the defendant's counterclaim was barred by "one or more of the following doctrines: [The statute of limitations contained in General Statutes § 52-577], laches, res judicata, collateral estoppel, or the application of [General Statutes] § 46b-86 to post-judgment attempts to modify property distributions." In granting the motion for summary judgment, the court stated in its memorandum of decision that "*several* of [Rubin's] special defenses bar all of the counts of the counterclaim as a matter of law." (Emphasis added.) The court did not, however, indicate that laches served as a basis for its decision, nor did it provide any specific analysis of the doctrine of laches.

Although it is clear that the defendant's unnecessary delay is a theme addressed by the court, our review of the memorandum of decision suggests that the court was merely supporting its position that the statute of limitations contained within § 52-577 barred the defendant's claim of fraudulent conveyance. We conclude, therefore, that contrary to the defendant's contentions, laches was not a basis for the court's summary judgment ruling.

the three year tort statute of limitations contained in § 52-577 and (4) the application of § 46b-81. The defendant further argues that the court improperly granted the motion for summary judgment on the intentional infliction of emotional distress count of her counterclaim. We conclude that the court correctly determined that (1) the defendant's fraudulent conveyance claim was barred by the statute of limitations contained in § 52-577, and (2) Rubin's conduct was not sufficiently extreme and outrageous so as to maintain a claim for intentional infliction of emotional distress.

As a preliminary matter, we set forth the applicable standard of review. Practice Book § 17-49 provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to

Indeed, the court's twenty page memorandum of decision is devoid of any analysis of the doctrine of laches, and the word "laches" appears only twice, once during the court's discussion of Rubin's special defenses and once during its discussion of the process for setting aside a marital judgment on the ground of fraud. In contrast, the court consistently provided thorough legal analysis and citation throughout its discussions of § 52-577, collateral estoppel and General Statutes § 46b-81. In sum, we conclude that the defendant's argument is without merit because the court based its decision on other grounds.

establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 840–41, 888 A.2d 104 (2006).

A

The defendant first argues that the court improperly rendered summary judgment with respect to the first count of her counterclaim. Specifically, the defendant argues that the court improperly concluded that the statute of limitations contained in § 52-577 barred her claim of fraudulent conveyance. We are not persuaded.

At the outset, we note that "[s]ection 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . [Section] 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. This court has determined that [s]ection 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." (Citations omitted; internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, 85 Conn.

App. 145, 148–49, 856 A.2d 518 (2004). The three year limitation period of § 52-577, therefore, "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) Id., 150. Furthermore, in addressing the scope of § 52-577, our Supreme Court has stated that the three year limitation period contained in § 52-577 applies to common-law fraudulent conveyance actions. *Travelers Indemnity Co.* v. *Rubin*, 209 Conn. 437, 441, 551 A.2d 1220 (1988) ("[T]he three year limitation period of 52-577 applies to all actions based on a tort unless there has been a specific statutory exclusion. The common law tort action to set aside a fraudulent conveyance of real property has not been statutorily excluded from § 52-577 . . . .").[8] "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

The crux of the defendant's present claim is that the statute of limitations contained in § 52-577 is not applicable to claims of fraudulent conveyance, when such claims are raised as defenses in an equitable proceeding. In support of this position, the defendant relies on our Supreme Court's decision in *Virginia Corp.* v. *Galanis*, 223 Conn. 436, 613 A.2d 274 (1992). In *Virginia*

---

[8] The defendant argues that pursuant to *Travelers Indemnity Co.* v. *Rubin*, supra, 209 Conn. 437, the limitation period set forth in General Statutes § 52-577 runs not from the time the fraudulent conveyance occurred but from the point at which the plaintiff had knowledge of it. We find this argument unpersuasive. By its very language, § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years *from the date of the act or omission complained of.*" (Emphasis added.) Furthermore, our case law clearly dictates § 52-577 is an occurrence statute and that its limitation period does not begin "when the plaintiff first discovers an injury." (Internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, supra, 85 Conn. App. 150.

*Corp.*, Armstrong Capital, S.A., the defendant in a fore-closure action, filed a special defense of fraudulent conveyance in order to obtain a priority position as an encumbrancer on a parcel of property. Id., 440–41. The plaintiff, Virginia Corporation, and another defendant, Consolidated Capital Corporation, argued that Armstrong was barred from bringing an action to set aside a fraudulent conveyance by the three year statute of limitations contained in § 52-577. Id., 443. The court, however, disagreed and offered the following distinction: *"Since the present case does not involve an action to set aside a fraudulent conveyance,* but rather an equitable defense asserted by Armstrong [Capital, S.A.] as a defendant in a foreclosure action . . . § 52-577 is inapplicable." (Emphasis added.) Id., 444.

*Virginia Corp.* is distinguishable from the present case. Here, unlike in *Virginia Corp.*, we are not concerned with a foreclosure action, and the defendant is not seeking a priority position as an encumbrancer on the properties. Rather, the defendant's fraudulent conveyance claim is clearly *an action to set aside a fraudulent conveyance* in order to gain full ownership.[9] This distinction was found to be outcome determinative by our Supreme Court in *Virginia Corp.* and, consequently, we conclude that the three year statute of limitations contained within § 52-577 applies in the present case.

Having concluded that § 52-577 applies, we next examine whether the defendant's fraudulent conveyance claim is barred by the statute. "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the

[9] The defendant contested the issue of ownership of the Weston and Fairfield parcels in the dissolution of marriage action, a postjudgment modification hearing, this partition action, a petition for a new trial and a quiet title action.

complaint and the date the action was filed." (Internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, supra, 85 Conn. App. 149–50. In the present case, Ronald LaBow transferred the Weston parcel to the trust on November 5, 1975. He transferred the Fairfield property to DeVita on September 18, 1978. The defendant first raised a claim alleging the fraudulent conveyance of the Weston parcel in her December 11, 1981 counterclaim. She first raised a claim alleging the fraudulent conveyance of the Fairfield property in her November 12, 1985 cross complaint. Each of these claims were filed well beyond the three year statutory period set forth in § 52-577. As such, the defendant's opportunity to challenge these transfers has expired.[10]

In sum, we conclude that the court properly concluded that the statute of limitations contained in § 52-577 applies to, and bars, the defendant's fraudulent conveyance claim. Accordingly, the court properly granted Rubin's motion for summary judgment with

[10] The defendant also argues that even if the limitation period contained within General Statutes § 52-577 is applicable, her fraudulent conveyance claim was filed timely because her 1987 pleadings incorporated her 1981 answer, special defense and counterclaim, and related back to her October, 1979 special defense, which stated that Valentine's "complaint is illegal, void and of no force and effect . . . ." We disagree.

In order for a defendant to commence an action against a plaintiff, and therefore satisfy a statute of limitations, the proper procedure is to bring a counterclaim. See Practice Book § 10-10. Unlike a counterclaim, a special defense is not an independent action; rather, it is an attempt to "plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 288–89, 857 A.2d 366 (2004); see Practice Book § 10-50. The defendant's 1979 special defense, therefore, did not commence an action alleging fraudulent conveyance and, accordingly, is insufficient to satisfy the statute of limitations. See *Raynor* v. *Hickock Realty Corp.*, 61 Conn. App. 234, 238–39, 763 A.2d 54 (2000) (concluding that prejudgment remedy documents, even when they provide notice of action, do not satisfy statute of limitations).

respect to the first count of the defendant's counterclaim.[11]

B

The defendant next argues that the court improperly rendered summary judgment in favor of Rubin with respect to the third count of her revised counterclaim, which alleged intentional infliction of emotional distress. We are not persuaded.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." (Citation omitted; internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, supra, 92 Conn. App. 846.

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

---

[11] Because we conclude that the court correctly determined that the defendant's fraudulent conveyance claim was barred by the three year statute of limitations contained in General Statutes § 52-577, we need not address the defendant's claims with respect to the court's alternate grounds for granting the motion for summary judgment.

and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 239–40, 884 A.2d 427 (2005), cert. denied, 276 Conn. 936, 891 A.2d 1 (2006).

The following additional facts are relevant to our resolution of the defendant's argument. The defendant's intentional infliction of emotional distress claim specifically alleged that (1) Rubin was aware that neither Valentine nor Ronald LaBow were valid owners of a one-half interest in the properties, (2) Rubin was aware of the divorce situation and improperly acted as a one-half owner despite the defendant's objections, and (3) Rubin and Ronald LaBow conspired to prevent the defendant from receiving Ronald LaBow's portion of the properties as well as to prevent the eviction of tenants on the Weston property. In granting the motion for summary judgment, the court concluded that the acts alleged in the counterclaim and their effect on the defendant did not rise to the level of extreme and outrageous conduct for purposes of a claim for intentional infliction of emotional distress.

Considering the alleged facts in the light most favorable to the defendant, we cannot conclude that reasonable minds could find Rubin's conduct toward the defendant extreme and outrageous. In *Appleton* v. *Board of Education*, 254 Conn. 205, 211, 757 A.2d 1059 (2000), the plaintiff, a schoolteacher, was publicly subjected to condescending comments by the school's principal, was escorted off school grounds by the police,

was required to undergo two psychiatric evaluations at the request of the board of education and was forced to resign. Nevertheless, our Supreme Court found that the defendant's actions did not constitute extreme and outrageous conduct for purposes of the plaintiff's intentional infliction of emotional distress claim.

In the present case, as in *Appleton*, we do not doubt that Rubin's actions were distasteful to the defendant; however, we agree with the court that "[t]here is nothing illegal in purchasing property, even if it may be clouded by claims of others, from a willing seller, and even though someone else, including a cotenant, may be upset that they did not obtain the property instead." The court, therefore, properly determined that Rubin's actions did not rise to the level of outrageousness necessary to maintain a claim for intentional infliction of emotional distress.

## II

We turn next to the defendant's claims that the court improperly denied several of her motions challenging the court's summary judgment ruling.

The following additional facts and procedural history are relevant to our resolution of the defendant's claims. On May 26, 1994, the defendant filed a motion to open the court's summary judgment ruling on the ground that Rubin had made fraudulent misrepresentations to the court. That motion was denied by the court, *West, J.*, on June 28, 1996. On July 18, 1996, the defendant filed a motion to reargue and to vacate the summary judgment ruling. The court denied that motion on December 10, 1996. The defendant next filed an amended motion to reconsider on April 10, 2003, in which she again claimed the court's summary judgment ruling was "based upon a misunderstanding of the facts and was erroneous in law." Specifically, the defendant argued that Judge Fuller incorrectly concluded that the

first pleading to raise the claim of fraudulent convey-
ance was the December 11, 1981 cross complaint, not
the defendant's October 3, 1979 special defense, and
that the 1979 special defense was a sufficient response
to the statute of limitations claim. In denying the motion
on May 20, 2003, the court, *Stevens, J.*, concluded that
Judge Fuller's "ruling granting the motion for summary
judgment was neither premised on nor affected by any
such 'misunderstanding.' " Thereafter, on June 9, 2003,
the defendant filed a motion to reargue the court's
denial of her amended motion for reconsideration in
which she repeated many of the arguments raised in
her motion for reconsideration. The defendant's motion
to reargue was denied on July 8, 2003, and on July 14,
2003, the court rendered judgment of partition by sale.

At the outset, we note that in reviewing a court's
ruling on a motion to open, reargue, vacate or recon-
sider, we ask only whether the court acted unreason-
ably or in clear abuse of its discretion. See, e.g., *Bankers
Trust Co.* v. *Pinciaro*, 81 Conn. App. 753, 755, 842 A.2d
1132 (2004) (motion to open reviewed under abuse of
discretion standard); *Van Nest* v. *Kegg*, 70 Conn. App.
191, 195, 800 A.2d 509 (2002) ("standard of review
regarding challenges to a trial court's ruling on a motion
for reconsideration is abuse of discretion" [internal quo-
tation marks omitted]); *Cadle Co.* v. *Gabel*, 69 Conn.
App. 279, 299, 794 A.2d 1029 (2002) ("[w]e review claims
that the court improperly denied a motion for reargu-
ment under the abuse of discretion standard" [internal
quotation marks omitted]); *In re Brianna B.*, 66 Conn.
App. 695, 707, 785 A.2d 1189 (2001) (standard of review
for court's denial of motion to vacate judgment is abuse
of discretion). "When reviewing a decision for an abuse
of discretion, every reasonable presumption should be
given in favor of its correctness." (Internal quotation
marks omitted.) *Bankers Trust Co.* v. *Pinciaro*, supra,
755. "As with any discretionary action of the trial court

. . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006).

## A

The defendant first claims that the court improperly denied her May 26, 1994 motion to open, as well as her July 18, 1996 motion to reargue and to vacate. We decline to review this claim. The defendant has failed to provide any legal citation or analysis in support of her argument. Instead, she merely asserts that there are "new facts" that were not before the court when the motion for summary judgment was granted. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citation omitted; internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, supra, 92 Conn. App. 479. Accordingly, we decline to address the question of whether the court improperly denied the defendant's motion to open and her motion to reargue and to vacate.

## B

The defendant also challenges the denial of her April 10, 2003 motion to reconsider and her June 10, 2003 motion to reargue. Because we conclude that Rubin's motion for summary judgment properly was granted, the court did not abuse its discretion in denying the defendant's motion to reconsider or her motion to rear-

gue. See *Vogel* v. *Maimonides Academy of Western Connecticut, Inc.*, 58 Conn. App. 624, 631, 754 A.2d 824 (2000) ("[b]ecause we conclude that the motion for summary judgment properly was granted, the court did not abuse its discretion in denying the plaintiff's motion to reargue and for reconsideration"); see also *Cadle Co.* v. *Gabel*, supra, 69 Conn. App. 299.

### III

The defendant's final claim is that the court, *Stevens, J.*, improperly rendered judgment of partition by sale without first deciding the defendant's quiet title action. Specifically, the defendant argues that the court improperly denied her motion to consolidate this partition action with her quiet title action. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. In February, 2003, the defendant initiated a quiet title action against Rubin and Ronald LaBow, individually and in his capacity as trustee. That action once again raised claims of fraudulent conveyance, intentional infliction of emotional distress and conspiracy. Thereafter, on March 29, 2003, the defendant filed a motion to consolidate the partition action with her quiet title action. The defendant argued that consolidation was necessary in order to have reexamined Judge Fuller's conclusion that her fraudulent conveyance claim was time barred. The court, however, denied the motion and explained that "[c]onsidering the timeliness of this motion and the period of time within which this has been . . . pending, considering the prejudice to opposing counsel and the impact that it may have on delaying this action, the court does not believe that this motion should be granted . . . ."

"A motion to consolidate is addressed to the discretion of the court, and [the court's] exercise of that discretion will not be reversed on appeal, unless in a case of manifest abuse." *Tracy* v. *New York, N.H. &*

*H.R. Co.*, 82 Conn. 1, 6, 72 A. 156 (1909). The defendant sought to consolidate this partition action with a quiet title action that was merely another attempt to attack the court's summary judgment ruling. Furthermore, her attempt at consolidation came at the eleventh hour of an action that has been ongoing since 1979 and would serve only to further delay its resolution. In light of the foregoing, we conclude that the court's denial of the motion to consolidate did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

---

* The listing of judges reflects their status on this court as of the date of oral argument.