# ARTHUR J. DAVIS *v.* COMMISSIONER OF CORRECTION
## (AC 32827)

Gruendel, Beach and Flynn, Js.

Argued October 25, 2011—officially released February 14, 2012

*John R. Williams*, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Arthur J. Davis, appeals following the habeas court's grant of summary judgment in favor of the respondent, the commissioner

of correction. On appeal, the petitioner argues that the court improperly concluded that he was not entitled to be resentenced in accordance with General Statutes § 53a-35.[1] We affirm the judgment of the habeas court.

To provide context for our discussion of the facts of the present case, we first review the relevant statutes. The petitioner originally was sentenced under General Statutes (Rev. to 1968) § 53-10, which provides, in relevant part, that "[a]ny person who commits murder in the first degree . . . shall suffer death unless the jury recommends imprisonment in the State Prison for life.

[1] In light of our conclusion that summary judgment was appropriate on that ground, we do not address the respondent's additional contention that summary judgment was properly rendered in favor of the respondent because the action was barred by res judicata. See *James* v. *Valley-Shore Y.M.C.A, Inc.*, 125 Conn. App. 174, 176 n.1, 6 A.3d 1199 (2010) ("[i]n light of our conclusion that summary judgment was appropriate on that ground, we do not address the court's alternate basis for rendering summary judgment or the plaintiff's challenge thereto"), cert. denied, 300 Conn. 916, 13 A.3d 1103 (2011), citing *Valentine* v. *LaBow*, 95 Conn. App. 436, 448 n.11, 897 A.2d 624 ("[b]ecause we conclude that the court correctly determined that the defendant's fraudulent conveyance claim was barred by the three year statute of limitations contained in General Statutes § 52-577, we need not address the defendant's claims with respect to the court's alternate grounds for granting the motion for summary judgment"), cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). The court indicated in its oral ruling that it was reluctant to apply res judicata to a federal court decision interpreting a state statute as a matter of first impression. The court distinguished the present case from *McCarthy* v. *Warden*, 213 Conn. 289, 294–98, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990), on which the concurrence relies, because *McCarthy* did not involve an issue of statutory interpretation. Neither party briefed this particular issue, nor has the concurrence provided support for the proposition that the application of res judicata is proper where a federal court interpreted a state statute as a matter of first impression. In light of the fact that res judicata is a flexible doctrine, we decline to consider the applicability of that equitable doctrine when the court's ruling on the petitioner's resentencing claim plainly disposes of his appeal. *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 591, 674 A.2d 1290 (1996) ("[t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies" [internal quotation marks omitted]).

If the person accused elects to be tried by the court and is found guilty . . . the court may, in its discretion, imprison such person in the State Prison for life. . . ." General Statutes (Rev. to 1968) § 54-125 provides that individuals sentenced to life imprisonment would be eligible for parole after serving twenty-five years, less any good time credits, not to exceed a total of five years.

"[A]s part of the Penal Code that became effective on October 1, 1971, the legislature adopted Public Acts 1969, No. 828, § 35, codified at General Statutes (Rev. to 1972) § 53a-35, which provides in relevant part that, '(a) [a] sentence of imprisonment for a felony shall be an indeterminate sentence . . . .' The statute also sets a maximum term of life imprisonment and a minimum term of not less than ten nor more than twenty-five years for a class A felony. . . .

"In 1980, as part of the legislature's comprehensive revision of the state's sentencing structure abolishing indeterminate sentencing and creating definite sentencing, the legislature enacted [General Statutes] § 53a-35b and amended § 53a-35 (a) to provide in relevant part: 'For any felony committed *prior to July 1, 1981*, the sentence of imprisonment shall be an indeterminate sentence . . . .' Public Acts 1980, No. 80-442, § 9, now codified at General Statutes § 53a-35 (a)." (Citation omitted; emphasis added.) *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 319, 920 A.2d 301 (2007).

With this background in mind, we review the undisputed facts and procedural history of the present case. On November 16, 1966, the petitioner was found guilty by a three judge panel of six counts of murder committed on August 25, 1966. On November 17, 1966, the three judge panel sentenced him to death pursuant to General Statutes (Rev. to 1968) § 53-10.[2] On November

---

[2] We note that General Statutes (Cum. Sup. 1965) § 53-10, which was in effect at the time the crimes here were committed, is identical to General Statutes (Rev. to 1968) § 53-10, under which the petitioner was sentenced.

22, 1966, the same panel stayed the imposition of the death penalty pending his appeal. The conviction and sentence were affirmed after direct appeal to our Supreme Court. *State* v. *Davis*, 158 Conn. 341, 260 A.2d 587 (1969), vacated in part and remanded, 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750 (1972).

On June 29, 1972, pursuant to *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), the United States Supreme Court vacated the petitioner's death sentence and remanded the case for further proceedings. *Davis* v. *Connecticut*, 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750 (1972). On November 16, 1972, in compliance with the Supreme Court's order, the petitioner was sentenced by a different three judge panel to life imprisonment, on each of the six counts of murder, with the sentences to run consecutively, pursuant to General Statutes (Rev. to 1971) § 53-10.

On January 25, 1985, the petitioner received a notice from Kay Bryan, a records supervisor at the Connecticut Correctional Institution at Somers, informing the petitioner that she had recalculated the petitioner's sentence time pursuant to a 1980 statutory amendment and subsequent judicial decision that removed the statutory cap of five years of good time for all prisoners.[3] In calculating the petitioner's parole eligibility, Bryan treated the minimum term of imprisonment on each of the petitioner's life sentences as twenty-five years, for a total minimum sentence of 150 years and a maximum sentence of life. The respondent thereafter reduced the 150 year minimum sentence by crediting the petitioner with 13,350 days of statutory good time, 492 days of jail credit, 6725 days of meritorious good time, 120 days

---

[3] In December, 1984, the Superior Court held that all Connecticut prisoners were entitled to benefit from the 1980 amendment to General Statutes § 54-125 that eliminated the five year restriction on the amount of good time credit that could be earned. Public Acts 1980, No. 80-442, § 26.

of outstanding meritorious credit, and some seven day job credits.

On June 28, 2007, the petitioner filed a petition for a writ of habeas corpus, alleging that his confinement was illegal because no court has ever set the minimum term of his confinement. The petition alleged that, pursuant to § 53a-35, the sentence for any felony committed prior to July 1, 1981, shall be indeterminate, and for any felony for which the maximum term of imprisonment is life, the minimum must be not less than ten or more than twenty-five years. The petitioner therefore argued that it was arbitrary and illegal for the respondent to calculate his parole eligibility based on a minimum term of twenty-five years per life sentence.

On December 10, 2008, the respondent filed a motion for summary judgment, pursuant to Practice Book § 23-37, arguing that the petition was barred by res judicata because the United States Court of Appeals for the Second Circuit addressed an identical claim from the petitioner in *Davis* v. *Bryan*, 889 F.2d 445 (2d Cir. 1989).[4] The respondent also argued that summary judgment was appropriate because the petitioner was resentenced, in 1972, pursuant to General Statutes (Rev. to 1968) § 53-10, and the respondent properly calculated his parole eligibility pursuant to General Statutes (Rev. to 1968) § 54-125.

[4] On May 12, 2009, the court denied without prejudice the respondent's motion for summary judgment. The court stayed the proceedings in the habeas corpus matter to permit the petitioner to file in the sentencing court a motion to correct an illegal sentence. See *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 39, 779 A.2d 80 (2001) ("in order to challenge an illegal sentence, a defendant either must appeal the sentence directly or file a motion to correct the sentence pursuant to [Practice Book] § 43-22 with the trial court before raising a challenge for the first time in a petition for a writ of habeas corpus"). Thereafter, the petitioner filed a motion to correct an illegal sentence with the sentencing court. On August 25, 2009, the sentencing court denied the motion for lack of subject matter jurisdiction. On January 15, 2010, the respondent filed a motion to renew its motion for summary judgment.

After hearing argument from the parties, the habeas court rendered summary judgment in favor of the respondent on October 18, 2010. The court first determined that the Second Circuit case did not have res judicata effect in the present case. The court next concluded that the respondent had not usurped any judicial function in calculating that the petitioner would be eligible for parole after he served twenty-five years for each count pursuant to General Statutes (Rev. 1968) § 54-125. The court also determined that § 53a-35 did not apply to crimes committed before October 1, 1971, and that the petitioner was properly sentenced under § 53-10. The court subsequently granted the petition for certification, and this appeal followed.

The petitioner claims that the court incorrectly concluded that he was properly resentenced under General Statutes § 53-10 in 1972.[5] The petitioner argues additionally that the respondent's 1985 recalculation of his sentence to a minimum term of twenty-five years per count was violative of the provisions of § 53a-35 because § 53a-35 was amended by Public Act 80-442, § 9, to make the statute applicable to the sentencing of any person convicted of any felony committed prior to July 1, 1981. We disagree, and conclude that the petitioner was properly resentenced under § 53-10 and that the respondent

[5] We note that the habeas court addressed three distinct questions of law in its oral ruling. The first question of law was which statute the petitioner was entitled to be sentenced under in 1972. The second question was the calculation done by the respondent in 1985 in accordance with General Statutes (Rev. to 1968) § 53-10 and General Statutes (Rev. to 1968) § 54-125. Finally, the habeas court ruled that § 53a-35 does not apply retroactively to crimes committed before October 1, 1971. The petitioner's brief states that the sole question before this court is which statute the petitioner should have been sentenced pursuant to in 1972, yet argues that it was the respondent's recalculation of the petitioner's sentence that is in violation of § 53a-35. Because the petition for certification stated the grounds broadly as "[w]hether the court erred in deciding the question of law set forth in its ruling," we address the habeas court's ruling in its entirety.

properly calculated the petitioner's parole eligibility under the statute applicable at the time of his offense.

"As a preliminary matter, we set forth the appropriate standard of review. Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review. . . . Whether a legislative act applies retroactively is a question of law over which this court has plenary review." (Citation omitted; internal quotation marks omitted.) *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 322–23.

We begin with the general rule that a defendant is prosecuted and sentenced under the statutes in effect at the time of the offense. The legislature has enacted "savings statutes as reflected in General Statutes § 54-194, which provides that '[t]he repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect'; and in General Statutes § 1-1 (t), which provides that '[t]he repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed.'

"It is obvious from the clear, unambiguous, plain language of the savings statutes that the legislature intended that the defendant be prosecuted and sentenced in accordance with and pursuant to the statutes in effect at the time of the commission of the crime. Our courts have repeatedly held that these savings statutes preserve all prior offenses and liability therefor so that when a crime is committed and the statute violated is later amended or repealed, defendants remain liable

under the revision of the statute existing at the time of the commission of the crime." *State* v. *Graham*, 56 Conn. App. 507, 510–11, 743 A.2d 1158 (2000) (holding that defendant was properly sentenced under statute in effect at time of commission of crime, notwithstanding amendment to statute passed before he was resentenced following remand).

It is clear that, in 1972, it was proper for the sentencing court to resentence the petitioner to a sentence of natural life, pursuant to General Statutes § 53-10, the statute in effect at the time of the offense and the statute the petitioner was originally sentenced under in 1966. While General Statutes § 53a-35 was in effect in 1972, nothing in the language of the statute expressed the intent of the legislature for the statute to be applied retroactively. Indeed, General Statutes § 53a-2 provides that the "provisions of this title shall apply to any offense . . . committed on or after October 1, 1971 . . . ." This plainly demonstrates a legislative intent that the 1971 revisions to the Penal Code be applied only prospectively. We therefore agree with the habeas court that the petitioner was properly resentenced under the statute in effect at the time of the offense, namely, General Statutes (Rev. to 1968) § 53-10.

The petitioner also claims that when the respondent recalculated the petitioner's parole eligibility in 1985, the respondent should have calculated it pursuant to the minimum sentences provided for in § 53a-35 as amended in 1980. The petitioner argues that § 9 of No. 80-442 of the 1980 Public Acts requires that § 53a-35 be applied to *all* crimes committed before July 1, 1981, including those committed before the effective date of the revised Penal Code, October 1, 1971. We disagree and conclude that § 53a-35, as amended by Public Act No. 80-442, does not apply to crimes committed before October 1, 1971.

There is a presumption that "statutes affecting substantive rights shall apply prospectively only." (Internal quotation marks omitted.) *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 323. Section 53a-35 is unquestionably a substantive statute because it "defines and regulates the length of time that a prisoner is deprived of his liberty. The statute does not merely tell the commissioner [of correction] how to administer an existing right, but, instead, governs the right that the commissioner must administer." Id., 324–25 (determining that § 53a-35b is a substantive statute). The "presumption that [a statute] has only prospective effect can be overcome only by a clear and unequivocal expression of legislative intent that the statute shall apply retrospectively." Id., 325.

No. 80-442 of the 1980 Public Acts was part of the legislature's comprehensive revision of the state's sentencing structure to eliminate indeterminate sentencing, created by the 1971 revision to the Penal Code, and create definite sentencing. Id., 319. No. 80-442 of the 1980 Public Acts ended indeterminate sentencing with the purpose of increasing the amount of time that defendants who are convicted of murder would spend in prison. See *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 664 n.15, 16 A.3d 676 (2011) (compiling legislative history of 1980 revisions). To accomplish this, No. 80-442 of the 1980 Public Acts restricted § 53a-35 to felonies committed before July 1, 1981, and enacted § 53a-35a to provide for definite sentencing for felonies committed on or after July 1, 1981. Prior to this amendment, indisputably § 53a-35 applied only to felonies committed after October 1, 1971, the effective date of the statute.

The legislature evinced no clear and unequivocal intent, while ending indeterminate sentencing going forward, to simultaneously extend it to a class of persons never before entitled to it. While the statutory provision

itself does not limit its application to felonies committed after October 1, 1971, this limitation is found in § 53a-2, which, as noted previously, restricts the application of the provisions of title 53a to offenses committed on or after October 1, 1971. We decline to hold that an amendment restricting the application of indeterminate sentencing to felonies committed before July 1, 1981, also serves to entitle those who committed felonies before October 1, 1971, to be resentenced under an indeterminate sentencing scheme that did not exist at the time of their offenses.[6]

Because § 53a-35 does not apply to crimes committed before October 1, 1971, the respondent properly calculated the petitioner's parole eligibility in accordance with General Statutes (Rev. to 1968) § 54-125, providing for a minimum sentence of twenty-five years, less earned time, for each life sentence.[7] This calculation did not change the sentence that the petitioner received

---

[6] We note that our Supreme Court has acknowledged the practical concerns that a retroactive application of § 53a-35 would create. When ruling on the retroactivity of § 53a-35b in *Mead* v. *Commissioner of Correction*, supra, 282 Conn. 317, the court cited favorably to *Davis* v. *Bryan*, supra, 889 F.2d 445, and noted that "[a] retroactive application of § 53a-35b would also raise some of the same concerns that troubled the [court in *Davis*]. . . . The petitioner asserted that the legislature created an entitlement to a judicially imposed indeterminate sentence by amending § 53a-35 to apply indeterminate sentencing to any felony committed prior to July 1, 1981, and by failing to limit this provision to felonies committed after October 1, 1971. . . . The court in *Davis* concluded that neither the 1971 provisions nor the 1980 amendment to § 53a-35 was retroactive, as a retroactive application of § 53a-35 would mean that every defendant sentenced under the pre-1971 penal code would be entitled to be re-sentenced to an indeterminate sentence. . . . The court found it improbable that the legislature intended to impose such a burden on the Connecticut courts. . . . We find it equally improbable that the legislature intended to impose such a burden on our court system by requiring that every defendant sentenced to life imprisonment prior to 1981 would be entitled to have his life sentence recalculated as a term of sixty years." (Citation omitted; internal quotation marks omitted.) *Mead* v. *Commissioner of Correction*, supra, 325–26.

[7] See footnote 3 of this opinion. Bryan's calculations reflect the removal of the five year cap on earned time.

in 1972 of six consecutive life sentences pursuant to General Statutes (Rev. to 1968) § 53-10, but merely calculated parole eligibility pursuant to statute.

We conclude that the court properly determined that the petitioner was correctly resentenced in 1972 pursuant to General Statutes (Rev. to 1968) § 53-10, and that the respondent properly recalculated the petitioner's parole eligibility under General Statutes (Rev. to 1968) § 54-125 because § 53a-35 does not apply to crimes committed before October 1, 1971. Summary judgment in favor of the respondent, therefore, was appropriate.

The judgment is affirmed.

In this opinion BEACH, J., concurred.

FLYNN, J., concurring. If it were proper for us to reach the merits in this case, I would agree with the result reached and the reasoning of the majority. I write separately because I would not reach the merits. The respondent, the commissioner of correction, has asserted that the doctrine of res judicata applies in this case to bar relitigation of a legal dispute between the same parties that already has resulted in a final judgment from the United States District Court for the District of Connecticut, later affirmed by the United States Court of Appeals for the Second Circuit in *Davis* v. *Bryan*, 889 F.2d 445, 448–51 (2d Cir. 1989). Both are courts of competent jurisdiction over both the subject matter and the parties in this case. The petitioner, Arthur J. Davis, first chose the federal forum. It ruled against him. After litigating the issue, and losing, he seeks to have the state courts of Connecticut enter an inconsistent judgment. That would be contrary to one of the principal public policy justifications for the res judicata doctrine, namely, "preventing inconsistent judgments . . . ." *Weiss* v. *Weiss*, 297 Conn. 446, 465, 998 A.2d 766 (2010). I would address the res judicata bar because, if applicable, consideration of the merits

of the petitioner's claim would be barred. I agree with the respondent that res judicata bars the petitioner's claim.

"[U]nder the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, *is an absolute bar to a subsequent action* on the same claim . . . [or any claim based on the same operative facts that] might have been made. . . . A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion *prevents reassertion of the same claim* regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Osuch*, 124 Conn. App. 572, 581, 5 A.3d 976, cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010).

In both the prior federal action and the case before us, the petitioner alleges that he is entitled, under Connecticut law,[1] to be sentenced to a minimum term of imprisonment from ten to twenty-five years for each of six consecutive life sentences for murders, which he presently is serving. The petitioner asserted that, in the federal action, his due process rights were violated when a state prison official determined that his "minimum sentence" on each count was twenty-five years. He claimed that he was entitled to have a judge make this determination. That minimum sentence was ten years on each count of murder. That is his claim, made again, in the present case.

It is well settled that "[t]he doctrine of res judicata ordinarily extends not only to a judgment rendered by

---

[1] Specifically, General Statutes § 53a-35, as opposed to General Statutes §§ 54-125 and 53-10.

a court of record of general jurisdiction, but also to judgments of all courts." 47 Am. Jur. 2d 73–74, Judgments § 514 (2006). The focus of analysis of res judicata is whether or not the matter previously has been adjudicated by a court of competent jurisdiction, not which court did the adjudicating. I am untroubled, therefore, by the fact that the judgment, which the respondent asserts bars the claim, came from the federal court. "[A] judgment of a court of concurrent jurisdiction directly upon the point is as a plea, a bar, or as evidence conclusive between the same parties or privies upon the same matters when directly in question in another court." (Internal quotation marks omitted.) *Johnson Co.* v. *Wharton*, 152 U.S. 252, 257–58, 14 S. Ct. 608, 38 L. Ed. 429 (1894); see 47 Am. Jur. 2d, supra, pp. 73–74. Res judicata precludes state court litigation of matters fully litigated in federal court. *McCarthy* v. *Warden*, 213 Conn. 289, 295, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990), citing *Virgo* v. *Lyons*, 209 Conn. 497, 501–502, 551 A.2d 1243 (1988). The principal reason for applying this doctrine is that litigation cannot be endless. That is true particularly in habeas appeals where the merits of a truly worthy case brought for the first time under "the great writ" can be lost in a sea of endless, previously litigated appeals, once finally decided, but revived anew.

For the foregoing reasons, I respectfully concur with the result reached in the majority opinion.